```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
```

HERMAN JOHNSON,

                Plaintiff,                    **REPORT AND RECOMMENDATION**

               -against-

                                                     **01-CV-5996 (DLI) (LB)**

COUNTY OF NASSAU, NASSAU HEALTH
CARE CORPORATION; NASSAU COUNTY
SHERIFF'S DEPARTMENT; DR. JAMES
NEAL, KIM WHITEHEAD; OFFICER BROWN,

                Defendants.

```
-------------------------------------------------X
```

**BLOOM, United States Magistrate Judge:**

Plaintiff Herman Johnson, proceeding, *pro se*, brings this action under 42 U.S.C. §1983 alleging, among other things, that defendants failed to provide him necessary medical care while he was incarcerated at the Nassau County Correctional Center ("NCCC"). Defendants move for summary judgment under Fed. R. Civ. P. 56.[1] The Honorable Nina Gershon referred this motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §636(b).[2] It is recommended that defendants' motions for summary judgment should be granted and the complaint should be dismissed.

---

[1] Nassau County and the Sheriff's Department are represented by the Nassau County Attorney's Office; the non-county defendants, Nassau County Health Care Corporation, Dr. James Neal and Nurse Kim Whitehead are separately represented. Accordingly, defendants submitted separate moving papers. Plaintiff opted to file one consolidated opposition to these two motions.

[2] The case was reassigned to the Honorable Dora L. Irizarry on September 10, 2004.

## BACKGROUND

Plaintiff was brought to Nassau County Correctional Center ("NCCC") on July 18, 2001. Amended Complaint at 4 ("Am. Compl."); Defendant's Memorandum of Law at 3 ("Def. Mem."). Upon his arrival, defendant Whitehead placed plaintiff in medical isolation for refusing to take a Tuberculosis ("TB") screening test. Id. Plaintiff maintains he informed defendant Whitehead that he had been tested for TB sixty days earlier and therefore did not need a new test. Nevertheless, plaintiff alleges defendants placed him in medical isolation for fourteen days until July 31, 2001. Id. Defendants contend however that they placed plaintiff in medical isolation for only four days and that, thereafter, plaintiff was confined for ten days pursuant to a disciplinary incident. Def. Ex. M. During this fourteen day confinement, plaintiff alleges that defendants denied him access to medical care, the law library, his family members and his attorney. Plaintiff further alleges that he complained repeatedly to housing unit officers and other staff members about his lack of medical care. At the heart of plaintiff's complaint, he alleges that defendants denied him his hypertension and pain medication. Am. Compl. at 4.

Plaintiff alleges that Dr. Neal, the director of the medical unit, repeatedly denied sick call for plaintiff and his entire unit. Am. Compl. at 6. Despite numerous promises, plaintiff states that he was never examined by Dr. Neal. Id. Plaintiff further alleges that, although he requested assistance from Officer Brown, identified by plaintiff as the inmate grievance officer, his requests were ignored. Id. According to plaintiff, defendant Brown prevented him from filing grievances and complaints with outside officials. Am. Compl. at 11.

Plaintiff filed the instant complaint on August 26, 2001 naming defendants Neal, Whitehead, Officer Brown and the Nassau County Sheriff's Department. By submission dated April 27, 2002,

plaintiff amended his complaint adding the Nassau County Health Care Corporation, who contracts with Nassau County to provide medical services at the NCCC. Although the substance of plaintiff's allegations remain the same, the amended complaint recasts these allegations as seven separate causes of action under §1983: 1) that Nassau County negligently hired Dr. Neal even though he had been previously dismissed at another facility for sexual harassment; 2) that the Nassau County Sheriff's Department negligently contracted with the Nassau County Health Care Corporation to provide medical care, even though it knew of Dr. Neal's negative prior employment history; 3) that the Nassau County Sheriff's Department negligently hired Dr. James Neal in violation of the Eighth Amendment and that defendants' practice of confining inmates to solitary confinement violated plaintiff's due process rights; 4) that defendant Nassau Health Care Corporation negligently hired Dr. Neal and Nurse Whitehead when they should have known that these defendants would "cut corners" and fail to provide adequate health care: 5) that Dr. James Neal deliberately and indifferently refused to provide plaintiff medical attention by ignoring plaintiff's repeated sick calls; 6) that Nurse Kim Whitehead deliberately and indifferently refused to provide plaintiff medical care; 7) and that Officer Brown, acting under color of state law in his official and unofficial capacity, deliberately and indifferently failed to intervene on plaintiff's behalf and prevented him from complaining about his treatment to outside prison officials.[3]

---

[3]Plaintiff also includes an eighth "cause of action" which states that defendants had notice of these conditions at the facility because of an alleged murder that occurred two years before plaintiff's arrival. Defendant appears to intend this cause of action to support his other allegations given that the incident described does not directly relate to plaintiff's complaint. Accordingly, the Court should not address this claim as a separate cause of action. Pl. Am. Comp. at 12.

3

Defendants moved for summary judgment,[4] plaintiff opposed the motions and defendants replied.

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine material issue of fact requiring a trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Cadrett, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

"When a motion for summary judgment is made and supported ..., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003)

---

[4]Plaintiff was given the requisite notice pursuant to Local Rule 56.2.

4

(quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Courts must review pro se pleadings liberally and interpret them "to raise the strongest arguments that they suggest." See e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted). This is especially true in the summary judgment context when a pro se plaintiff's claims are subject to a final dismissal. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("Special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.").

## A. DELIBERATE INDIFFERENCE CLAIMS

Since plaintiff predicates his claims in large part on defendants' deliberate indifference to his medical needs, the Court considers these claims first. Deliberate indifference to the serious medical needs of a prisoner falls under the Eighth Amendment's prohibition against "cruel and unusual punishments" and the unnecessary and wanton infliction of pain. See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). Inadvertent or negligent failure to provide adequate medical care does not rise to the level of deliberate indifference. Estelle, 429 U.S. at 105-06. "Allegations of medical malpractice or negligent treatment are insufficient to state a claim under § 1983." Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991).

There is both an objective and a subjective component to a deliberate indifference claim. Plaintiff bears the burden of proof to demonstrate that his deliberate indifference claim meets both the objective and subjective requirements. Here, plaintiff fails to carry his burden on both

5

components of his deliberate indifference claim. Accordingly, plaintiff's deliberate indifference claim should be dismissed.

i. Risk of Serious Harm

The objective prong of the deliberate indifference standard requires that plaintiff be subjected to conditions that are "repugnant to the conscience of mankind," Estelle, 429 U.S. at 106, or that result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Objectively the alleged deprivation must be 'sufficiently serious,' in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)(citation omitted). A serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Chance v. Armstrong, 143 F. 3d 698, 702 (2d Cir. 1998)(internal quotations marks and citation omitted).

Plaintiff claims that defendants denied him pain and hypertension medication. Plaintiff states that "defendants knew or should have known that there was an excessive risk to the plaintiff's health and safety. Based on their responses an inference can be drawn that they were in fact aware of the risk of serious harm existed." Pl. Opp. at 1. However, plaintiff's medical records indicate that he refused hypertension medication on at least ten occasions during his fourteen days of confinement at NCCC. Def. Ex. L.[5] Additionally, plaintiff's medical records indicate that defendants provided

---

[5]Plaintiff's medical records reflect that he refused Cardizem on at least ten occasions. Def. Ex. L. Cardizem is a brand name for the drug Diltiazem, which is commonly prescribed to treat hypertension. See National Institutes of Health website at

him with Elavil, Naprosyn, Neurotin, Tylenol 3 and Robaxin, all pain medications, during his fourteen days at NCCC.[6] Plaintiff's opposition to defendants' motion does not contest this medical history. Since these medical records establish that plaintiff received pain medication and refused hypertension medication, he cannot now claim that defendant placed him at risk of serious medical harm by denying him this medication.[7] Plaintiff has not established the first prong of a deliberate indifference claim since defendants did not disregard plaintiff's serious medical needs.

ii. Culpable State of Mind

Even if plaintiff could establish the objective prong, plaintiff must also establish that a reasonable juror could find that the prison officials acted with a culpable state of mind. This requirement is met where the evidence shows that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Chance, 143 F.3d at 702. "'Mere medical malpractice' is not tantamount to deliberate indifference," but it may rise to the level of deliberate indifference when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" Chance, 143 F.3d at 703. (quoting Hathaway, 99 F.3d at 553).

---

http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a684027.html

[6]For more information on these pain relievers see: http://www.nlm.nih.gov/medlineplus/druginformation.html

[7]Moreover, plaintiff's assertions regarding the possibility of future harm are undermined by his own admission that he no longer takes hypertension medication. Def. Ex. I at 76.

7

Plaintiff's allegations here fail to meet these subjective requirements. Plaintiff alleges that he repeatedly complained to prison officials about his need for hypertension and pain medication and that defendants Neal and Whitehead ignored his requests. However, the instant record belies plaintiff's claims. A new admissions report was generated when plaintiff arrived at the NCCC. The report indicates that plaintiff told prison health officials that he was not currently taking any medication. Additionally, plaintiff indicated that he had experienced no medical problems in the six months prior to his admission to the NCCC. Plaintiff reviewed and signed the report on July 20, 2001. Def. Ex. J.

Plaintiff disputes that he signed any document on July 20, 2001, which invites the Court to question the authenticity of the intake form. As plaintiff explains, "it is further important for this court to review and question the form allegedly signed by the plaintiff, where the date on the form is July 20, 2001, which would be three days after the plaintiff was brought to the jail, plaintiff maintains that he did not sign any forms on July 20, 2001." Pl. Aff. In Opp. ¶25. The Court need not consider the authenticity of the intake form. Even if the Court accepts that plaintiff never signed the intake form, his deliberate indifference claim must nevertheless fail.

Upon his arrival, plaintiff states that he informed Nurse Whitehead that "he was in a lot of pain and that he needed medication for pain and that he suffered from hypertension." Pl. Aff. Opp. ¶6. It is undisputed from the record evidence herein that plaintiff refused hypertension medication approximately ten times. Def. Ex. L. Moreover, the plaintiff's uncontroverted medical history indicates that defendants provided plaintiff with Elavil, Naprosyn, Neurotin, Tylenol 3 and Robaxin, all pain medications. Id. Accordingly, plaintiff cannot demonstrate that defendants knowingly disregarded a serious risk of harm since defendants treated plaintiff's conditions. Thus, plaintiff's

claim fails to make out the subjective requirement of a deliberate indifference to serious medical needs claim.

**B. DUE PROCESS CLAIMS**

Plaintiff alleges that defendants placed him in medical isolation for fourteen days. However, defendants maintain that, although plaintiff was initially placed in "medical isolation," for four days, he remained in disciplinary confinement for ten additional days for his refusal to comply with prison "lock-in" procedures. Def. Ex. M. Plaintiff's placement in medical isolation for four days is a permissible administrative intake procedure given that plaintiff himself refused to take a TB test. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Covino v. Vermont Dep't of Corrections, 933 F.2d 128, 129 (2d Cir. 1991) (applying Hewitt in concluding that pretrial detainee did not have a constitutional right to remain in the general population where removal was for non-punitive reasons); see also Johnson v. Keane, 1993 U.S. Dist. Lexis 19292 at *23 (S.D.N.Y. May 3, 1993)("Mandatory [tuberculosis testing] constitutes a reasonable regulation" and confinement for failure to submit to testing does not give rise to a due process violation). Accordingly, the Court should dismiss plaintiff's claim regarding the four days he was confined in medical isolation for failure to take a TB test.

As to the propriety of plaintiff's ten day disciplinary confinement, it has long been clear that inmates retain due process rights in prison disciplinary proceedings. See Wolff v. McDonnell, 418 U.S. 539 (1974) (outlining the basis procedural protections that inmates are due when subject to significant disciplinary punishment). In 1995, the Supreme Court clarified that such protections are only required when disciplinary punishment "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484

(1995). However, Sandin does not apply to pre-trial detainees. Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir. 2001). Accordingly, pre-trial detainees need not demonstrate an atypical and significant hardship and cannot be disciplined without a due process hearing. Id.

Defendants state that plaintiff was admitted to the NCCC pursuant to an Order to Produce on July 18, 2001. Def. Mem. at 3. Neither plaintiff nor defendant provides any further information about plaintiff's status while confined at NCCC. Accordingly, the Court adopts the inference most favorable to plaintiff, that he was a pre-trial detainee during the period in question. On July 25, 2001, plaintiff was found guilty of failing to lock-in after a disciplinary hearing. Plaintiff signed the form acknowledging his disciplinary hearing. Def. Ex. M. Thus, plaintiff's allegation that he was denied a due process hearing is contradicted by the record. See Am. Compl. at 9.

Plaintiff, as a pre-trial detainee, was entitled to a due process hearing before defendants subjected him to punitive segregation. Benjamin, 264 F.3d at 189. However, plaintiff signed an acknowledgment form from the disciplinary hearing demonstrating that he received a hearing shortly after he was charged with misconduct. Thus, defendants' actions in confining plaintiff did not violate his due process rights. Accordingly, the Court should grant defendants' motions for summary judgment on plaintiff's due process claims.

### C. OFFICER BROWN'S QUALIFIED IMMUNITY

The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995)(quoting Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982)). "A government official is entitled to qualified immunity from suit for actions taken as a government official if: 1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; 2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or 3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." Cuoco v. Moritsugo, 222 F.3d 99, 109 (2d Cir. 2000); Horne v. Coughlin, 155 F.3d 26, 29 (2d Cir. 1998).

Plaintiff alleges that defendant Brown deliberately and indifferently prevented him from complaining to authorities so that his claims of medical misconduct could be investigated. Defendant Brown maintains that, at the time of plaintiff's incarceration at NCCC, he held the title of Bias Complaint Officer and not "inmate grievance officer." Defendant Brown explains that his duties consisted merely of picking up grievances and delivering them to the grievance office. Moreover, each area had a designated grievance box where inmates could submit grievances and correspondence to the grievance unit. Defendant Brown has no recollection of any conversations with plaintiff. Defendant Brown's Affidavit ¶¶1-6.

Kenneth Williams ("Williams"), the actual inmate grievance coordinator at the Nassau County Sheriff's department, explains that the Inmate Grievance Unit at the NCCC maintains records of all grievances filed by inmates. Williams Affidavit ¶10. A records search indicates that plaintiff submitted a Supervisor Intervention form on August 3, 2001 in which he complained, *inter alia*, that he was not receiving medical care. In response to this complaint, the Deputy Tour Commander, Sgt. Baron, attempted to resolve the complaint by notifying the medical unit regarding plaintiff's sick call complaints. Id. at ¶10. Dissatisfied with Sgt. Baron's response to his initial

11

grievance, plaintiff filed five more grievances on August 3, 2001 which went directly to Williams. Id. at 12. Although Williams intended to respond to plaintiff's grievances, plaintiff was discharged on August 10, 2001. Id. at ¶12. William's affidavit makes clear that the Inmate Grievance Unit received six separate complaints from plaintiff during his brief fourteen day stay at the NCCC. The receipt of these complaints refutes plaintiff's claims that defendant Brown prevented him from complaining to officials. Moreover, since defendant Brown's job responsibilities did not require him to personally investigate and act on plaintiff's complaints, plaintiff has not identified any conduct on defendant Brown's part that violated any federal or Constitutional law. Accordingly, the Court should grant defendant Brown's motion for summary judgment as he is entitled to qualified immunity.

## D. MUNICIPAL LIABILITY

Plaintiff alleges that both the Nassau County Sheriff's department and Nassau Medical Care Corporation were negligent in hiring Dr. Neal. Defendant Nassau Health Care Corporation is a private corporation which contracted with Nassau County to provide medical care to the inmates at the NCCC. Although Nassau County Health Care Corporation is private,

> the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in custody and it does not deprive the State's prisoners of the means to vindicate those rights. The State bore an affirmative responsibility to provide medical care to [petitioner], the state delegated that responsibility to [respondent]; and respondent voluntarily assumed that obligation by contract.

West v. Atkins, 487 U.S. 42, 53-54 (1998).

Accordingly, plaintiff's §1983 complaint properly names Nassau County Health Care Corporation as a defendant in the instant action. Nevertheless, both the Nassau County Health Care Corporation

and the Nassau County Sheriff's Deparment can only be held liable if the municipality is liable. Based on the record herein, the Court should grant summary judgment for both defendants.

The Supreme Court opened the door to municipal liability in Monell v. Dep't of Soc. Servs, 436 U.S. 658 (1978). In order to prevail on a § 1983 claim against a municipality, a "plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (citation omitted). In this case, since plaintiff has not established a constitutional violation, he cannot prove that a violation resulted from a municipal custom, policy or practice. Moreover, plaintiff does not identify any specific policy, custom, or practice officially promulgated by either the Nassau County Sheriff's Department or the Nassau Medical Care Corporation that led to any violation of his rights. Accordingly, the Court should grant summary judgment in favor of defendants.

To the extent that plaintiff's claim could be construed as a negligent hiring claim against a municipality, plaintiff's claim must also fail. In Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997), the Supreme Court explained the standard for municipal liability on a §1983 improper hiring claim:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

Id. at 1392.

Additionally, culpability depends not on the probability that the inadequately-screened [employee] would inflict any constitutional injury, but rather whether the [employee] was "highly likely to inflict

13

the particular injury suffered by the plaintiff." Id. In this case, plaintiff alleges that Defendant Nassau County "knew or should have known that defendant Dr. James Neal upon information and belief was dismissed and/or forced to resign from the position as head of medical services for the New York City Department of Corrections Health Services/Prison Health Services for providing inadequate medical care to inmates and allegations of sexual harassment." Am. Compl. at 8.

Here, plaintiff's bare allegation that Dr. Neal was dismissed from his previous job for providing inadequate medical care with nothing more fails to carry his burden on summary judgment. Plaintiff may not rest on "mere allegations"regarding Dr. Neal's past in order to make out his municipal liability claim. Fed. R. Civ. P. 65(e); see Matsushita, 475 US. at 586-87 (1986). Thus, plaintiff's negligent hiring claim must fail.

Accordingly, the Court should grant Nassau County Sheriff's Department and Nassau Medical Center's motions for summary judgment.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that defendants' motions for summary judgment should be granted and plaintiff's complaint should be dismissed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED:

s/ Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: March 31, 2005
Brooklyn, New York